IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

**EOD**

11/15/2021

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **DARLENE C. BALISTRERI-AMRHEIN** | § | Case No. 19-41626 |
| xxx-xx-2870 | § | |
| 112 Winsley Cir., McKinney, TX  75071 | § | |
| | § | |
| Debtor | § | Chapter 7 |
| | § | |

| | | |
|---|---|---|
| AMERICAN TECHNOLOGY, INC. | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 19-4077 |
| | § | |
| DARLENE C. BALISTRERI-AMRHEIN | § | |
| | § | |
| Defendant | § | |

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

Upon trial of the Amended Complaint Objecting to Discharge of Debt filed by

Plaintiff, American Technology, Inc., seeking to deny discharge of Plaintiff's claims

against Defendant, Darlene C. Balistreri-Amrhein, pursuant to 11 U.S.C §§ 523(a)(2)(A)

and 523(a)(6), the Court issues the following findings of fact and conclusions of law.

These findings dispose of all issues pending before the Court.

1

# FINDINGS OF FACT

1.  Defendant, Darlene C. Balistreri-Amrhein, is an individual residing in Collin County, Texas.[1] Defendant's residence is located at 112 Winsley Cir., McKinney, TX 75071-4624.[2]

2.  Plaintiff is a construction company based in California.

3.  On or about April 30, 2017, Defendant's home suffered hail and water damage requiring extensive repairs to be made.[3]

4.  Defendant's home was insured by Universal North American Insurance Company. Defendant made two claims on her homeowners insurance policy and Universal North American Insurance Company agreed to pay to repair this hail and water damage on account of these claims.

5.  Defendant sought to hire a contractor to perform necessary repairs and ultimately hired Plaintiff. Prior to engaging Plaintiff, Defendant contacted or obtained repair estimates from three other companies, Discount Drains, Phoenix, and Hoss Roofing which were all unsatisfactory to her for various reasons.[4] One of these, Hoss Roofing, was hired by Defendant for roof repairs, but was later terminated by Defendant.[5]

6.  Defendant was referred to Plaintiff by her insurance carrier. Shandon Deatherage, a project manager employed by ATI, inspected Defendant's home for necessary repairs. ATI uses a software program into which measurements are inputted to generate a written repair estimate. Shandon Deatherage prepared two such written repair estimates. The first was for packing and removal of Defendant's personal

---

[1] Dkt #8 at 2.

[2] Ex. 1.

[3] Ex. 27 (Deposition Transcript at Pg. 8).

[4] Ex. 27 (Deposition Transcript at Pgs. 12-19).

[5] Ex. 27 (Deposition Transcript at Pg. 25).

property from her home in the total amount of $75,906.27.[6]  The second was for estimated repairs.[7]

7.    On or about June 4, 2018, Defendant and Plaintiff executed an agreement entitled "*Work Proposal and Authorization*" (the "June 2018 Contract") for Job No. A2B-24-62593.[8]

8.    The June 2018 Contract contemplated that "Work" would be completed by December 4, 2018.[9]  The June 2018 Contract further provided that "Contractor [Plaintiff] will furnish all materials, equipment, subcontractors and perform all labor necessary to complete the following work (the "Work"): Packing, storage and delivery of all personal property in home.  Price based on time and material and will be billed for actuals."[10]

9.    The June 2018 Contract did not contain a specific price that Defendant was expected to pay Plaintiff.  Rather, it stated under the heading "Contract Sum" that Plaintiff was "Authorized to commence Work with the understanding that all costs and terms will be in detail and submitted in writing to Client [Defendant]."[11] Under the heading "Payment Terms," the June 2018 Contract stated that "Payment based on scope to carrier."[12]  Also under the heading "Payment Terms," the June 2018 Contract stated that "The entire balance (if any) is due within 10 days after substantial completion.  All deductible amounts not covered by insurance and all additional Work authorized in a change order must also be paid and are due upon acceptance of Work."[13]

---

[6] Ex. 1.

[7] Ex. 11.

[8] Ex. 8.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

10.  The June 2018 Contract under the heading "Insurance" contained the following provision: "Client [Defendant] (1) assigns to Contractor [Plaintiff], Client's right to be paid insurance proceeds relating to the Work; (2) appoints Contractor as Client's attorney-in-fact to endorse insurance checks issued in Client's name; (3) instructs Clients insurer to either pay the insurance proceeds do relating to the Work directly to Contractor or to insert Contractor's name in each insurance check or draft made in payment of the loss and send such payment to Contractor; (4) agrees to pay directly to Contractor any amount not covered by Clients insurer; (5) shall, unless Contractor agrees otherwise, carry adequate property damage and liability insurance to cover the Work."[14]

11.  The June 2018 Contract did not incorporate any other documents into its terms.[15]

12.  On or about July 6, 2018, Defendant and Plaintiff executed a second agreement entitled "*Work Proposal and Authorization*" (the "July 2018 Contract") without a Job No. specified .[16]

13.  The July 2018 Contract contemplated that "Work" would be completed by December 15, 2018.[17]  The July 2018 Contract further provided that "Contractor [Plaintiff] will furnish all materials, equipment, subcontractors and perform all labor necessary to complete the following work (the "Work"): Construction of Downstairs of home due to water damage.  Agreed scope with ACM (Robert Carter) ($60,768.64 *Price could vary with additional items found)."[18]

14.  The July 2018 Contract under the heading "Contract Sum" stated that Plaintiff was "Authorized to commence Work with the understanding that all costs and terms will be in detail and submitted in writing to Client [Defendant]."[19]  Under the heading "Payment Terms," the July 2018 Contract stated that "Payment shall be made as the Work progresses according to the following schedule: Payment

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

4

schedule to be signed by customer."[20]  Also under the heading "Payment Terms,"
the July 2018 Contract stated that "The entire balance (if any) is due within 10
days after substantial completion.  All deductible amounts not covered by
insurance and all additional Work authorized in a change order must also be paid
and are due upon acceptance of work."[21]

15.     The July 2018 Contract under the heading "Insurance" contained the following
        provision: "Client [Defendant] (1) assigns to Contractor [Plaintiff], Client's right
        to be paid insurance proceeds relating to the Work; (2) appoints Contractor as
        Client's attorney-in-fact to endorse insurance checks issued in Client's name; (3)
        instructs Clients insurer to either pay the insurance proceeds do relating to the
        Work directly to Contractor or to insert Contractor's name in each insurance check
        or draft made in payment of the loss and send such payment to Contractor; (4)
        agrees to pay directly to Contractor any amount not covered by Clients insurer; (5)
        shall, unless Contractor agrees otherwise, carry adequate property damage and
        liability insurance to cover the Work."[22]

16.     The July 2018 Contract did not incorporate any other documents into its terms.[23]

17.     On July 20, 2018, Defendant signed a "Progress Payment Schedule" listing her as
        the customer with respect to "Job Number A2B-27-65132" in the "Contract
        Amount" of $60,768.64.[24]  This is the same amount as listed under the heading
        "Work" in the July 2018 Contract.  The "Progress Payment Schedule"
        contemplates three payments of roughly equivalent amount (1) due at
        commencement of work, (2) due at 50% completion, and (3) due at completion of
        work.[25]

18.     When Defendant signed the June 2018 Contract and the July 2018 Contract, she
        agreed that she would pay the cost of the "Work" as defined in both documents.

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

Plaintiff, by entering into the June 2018 Contract and the July 2018 Contract agreed to perform the work as described therein.  Plaintiff commenced "Work" as contemplated under the June 2018 and July 2018 Contracts.

19.   The June 2018 and July 2018 Contracts both contained the following provision: "Legal Rights and Requirements: To secure payment of all amounts owed for Contractor's work and providing storage and protection for Client, Client acknowledges that Contractor has a lien on all property of Client in Contractor's possession pursuant to applicable state law."[26]

20.   Plaintiff took possession of Defendant's furniture and some or all of the contents of her home, which property was placed in storage.  There is no indication that Defendant surrendered her possessions to Plaintiff while simultaneously intending not to pay Plaintiff, nor any credible explanation of why she might do so.

21.   Defendant admits she was issued a total of 16 payments by Universal North America Insurance Company for the purpose of repairing her home.[27]  Some of these payments were issued directly to Defendant while others were made directly to Plaintiff.  One was issued to Defendant and negotiated by Defendant to Plaintiff.  These payments were admitted by Defendant to be as follows:[28]

### Claim #43018676 - Water Leak Claim

| Date | Amount | Issued To: |
|---|---|---|
| 4/6/2018 | $17,590.34 | Darlene Balistreri |
| 6/1/2018 | $10,000.00 | Darlene Balistreri |
| 6/27/2018 | $18,064.37 | ATI |
| 7/19/2018 | $22,876.33 | Darlene Balistreri (signed over to ATI) |
| 12/31/2018 | $5,000.00 | Darlene Balistreri |
| 12/31/2018 | $8,900.00 | Darlene Balistreri |
| 2/21/2019 | $8,973.87 | ATI |
| 2/21/2019 | $1,427.48 | Darlene Balistreri |
| 5/15/2019 | $2,131.20 | Darlene Balistreri |
| | | |
| Total Issued | $94,963.59 | |

---

[26] Id.

[27] Dkt #8 at 6.  Docket references are to filings in this adversary proceeding unless specified otherwise.

[28] Dkt #8 at 3.

Total Received        $49,914.57
Total w/Insured       $45,049.02

**Claim #43017563 Hail Claim**

| Date | Amount | Issued To: |
|------|--------|------------|
| 3/7/2018 | $12,047.64 | Darlene Balisteri |
| 7/3/2018 | $9,333.21 | ATI |
| 2/1/2019 | $22,876.33 | Darlene Balisteri |
| 5/14/2019 | $4,860.66 | Darlene Balisteri |
| 5/15/2019 | $2,691.62 | Darlene Balisteri |
| 5/17/2019 | $27,165.46 | ATI. |

Total Issued          $78,974.92
Total Received        $36,498.67
Total w/Insured       $42,476.25.[29]

22.   No change orders signed by Defendant were produced at trial by Plaintiff.

23.   According to Plaintiff's calculations, the total amounts billed to Defendant for "Work" under the June 2018 and July 2018 Contracts, received from Defendant in payment for such work, and the difference representing the remaining balance due are as follows:

Total Billed          $158,145.94
Total Received        $86,413.94
Balance Due           $71,732.71.[30]

Defendant admits the accuracy of these figures.[31]  Plaintiff has therefore suffered damages by reason of nonpayment in the amount of $71,732.71.

24.   Defendant further admits that she received $173,938.51 in insurance proceeds over a 13-month period and remitted $86,413.94 to ATI, and that she has made no other

---

[29] Dkt #2 at 2-3.

[30] Ex. 2.

[31] Dkt #8 at 7.

payments to Plaintiff.[32]  Defendant admits she withheld $87,525.67 in insurance proceeds which were not remitted to Plaintiff.[33]

25.    A dispute arose between Plaintiff and Defendant regarding the quality of Plaintiff's work, including whether mold remediation was properly and completely performed, or even required.

26.    Repair work was not completed by Plaintiff prior to the dates listed in the June 2018 Contract or in the July 2018 Contract.

27.    As part of this dispute concerning Plaintiff's workmanship, Defendant refused to continue making payments to Plaintiff under either the June 2018 or July 2018 Contracts.

28.    Defendant exchanged a number of emails with representatives of Plaintiff as well as with Universal North American Insurance Company's insurance adjuster, Robert Carter, regarding her dispute with Plaintiff.[34]

29.    Robert Carter caused an inspection of Defendant's home to be conducted on April 24, 2019, by Shaun Keefer of Sedgwick.  Defendant was present at this inspection and pointed out numerous repair issues about which she had complaints.  Mr. Keefer inspected each of the issues complained about by Defendant.[35]

30.    Shaun Keefer of Sedgwick subsequently issued a written inspection report which on the whole did not find the complaints of Defendant credible.  By way of example, the report stated "The Insured [Defendant] claims that fans and dehumidifiers caused discoloration in the wood paneling above the fire place.  We don't believe this is true."[36]  It also stated "The Insured claims that old plumbing was used that was in contact with mold.  The plumbing appears to be new."[37]

---

[32] *Id.*

[33] Dkt #8 at 3.

[34] Ex. 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, and 24.

[35] Ex. 9.

[36] *Id.* at 3.

[37] *Id.*

31.  Plaintiff and Defendant never reached an agreement in resolution of their dispute regarding payment or workmanship quality.  As part of an effort to resolve this dispute, Plaintiff sent Defendant a proposed contract addendum dated May 22, 2019.[38]  This addendum was never signed by Defendant.

32.  On April 5, 2019, Plaintiff sent a demand letter claiming Defendant owed it $37,892.31 for work that was completed and threatening to place a mechanic's lien on Defendant's home if amounts due were not paid.[39]  In an email communication sent to Defendant on April 7, 2019, Plaintiff further stated that all work would cease and none of her personal property would be returned until payment was made.[40]

33.  Documentation was not produced at trial by Plaintiff that a Chapter 53 mechanic's and materialman's lien was actually perfected by Plaintiff's filing a lien affidavit.

34.  On May 2, 2019, Plaintiff sent Defendant another demand letter seeking full payment of $17,906.10.[41]

35.  Without benefit of hearing her testimony at trial, at least some evidence produced at trial by Plaintiff would seem to indicate that Defendant used insurance proceeds she received to repair her home and pay other related bills.[42]

36.  On April 7, 2019, Plaintiff's Construction Manager, Larry Hokaj, advised Defendant that:

> We will not surrender personal contents until all payments are up to date and made in full per all contract terms, so failure to pay is jeopardizing your move back date and may be affected by ALE limits.  Our deadline is close of business on Wed. 4-

---

[38] Ex. 3.

[39] Ex. 10.

[40] Ex. 5.

[41] Ex. 26.

[42] Ex. 27, Ln. 9, Pg. 92, through Ln. 3, Pg. 93; *see also* Ex. 25.

> 10.  If payment is not received by then we will be left with no
> option other than to take appropriate legal action, which may
> result in a lien being placed on the property, your account
> being placed in collections thereby potentially jeopardizing
> your credit rating, and filing a lawsuit.[43]

37.    Nancy Kirk testified for Plaintiff at trial that Plaintiff previously made available to
Defendant her furniture and the contents of her home which were in Defendant's
possession.  The evidence indicates that Defendant hired Full House Moving of
Garland, Texas on May 8, 9, and 10, 2019, to move her belongings.[44]

38.    Nancy Kirk further testified for Plaintiff at trial that Plaintiff retains possession of
some decorative art owned by Defendant.

39.    On June 14, 2019, Defendant filed a voluntary bankruptcy petition under Chapter
7 in the United States Bankruptcy Court for the Eastern District of Texas, Sherman
Division and was assigned Case No. 19-41626 (the "Bankruptcy Case").[45]

40.    Michelle Chow was assigned as the Chapter 7 Trustee in the Bankruptcy Case.[46]

41.    Defendant filed her original schedules in the Bankruptcy Case on June 27, 2019.[47]

42.    Plaintiff was scheduled as an unsecured creditor by Defendant in her Chapter 7
bankruptcy case.  Defendant listed Plaintiff as being owed a noncontingent,
liquidated, undisputed debt in the amount of $53,000.00.[48]

43.    On June 27, 2019, Defendant filed amended schedules which did not change the
listing of Plaintiff's claim.[49]

---

[43] Ex. 5.

[44] Ex. 25.

[45] Dkt. #1 in the Bankruptcy Case.

[46] Dkt. #5 in the Bankruptcy Case.

[47] Dkt. #7 in the Bankruptcy Case.

[48] *Id.*

[49] Dkt. #13 in the Bankruptcy Case.

44.    On August 21, 2019, the Chapter 7 Trustee filed a notice of intent to abandon
Defendant's claims, if any, against Plaintiff.[50]  On September 9, 2019, an Order
for Abandonment was entered in the Bankruptcy Case.[51]

45.    Plaintiff timely filed its Adversary Complaint, as amended, on September 24,
2019, seeking to except Plaintiff's claim from the scope of the discharge granted
to Defendant as a debt procured by false representation or false pretenses under §
523(a)(2)(A) of the Bankruptcy Code, or as a debt arising from willful and
malicious injury by the Defendant to another entity or to the property of another
entity.[52]

46.    A discharge order was entered in the Bankruptcy Case on December 16, 2019.[53]
The Bankruptcy Case was closed on May 27, 2020.

47.    Defendant answered on November 5, 2019 (the "Answer").[54]

48.    In her Answer, "Debtor admits that Debtor's remediation costs were covered
under her insurance policy – if such work was properly completed, and as a result,
Debtor agreed to '. . . assign to Contractor [ATI], [the] right to be paid insurance
proceeds' relating to the work provided."[55]

49.    Despite being represented by counsel in this adversary, Defendant filed a number
of motions acting on her own which were denied including:

    A.    Amended Motion For Dismissal and Needed Court Orders With New
Information/Evidence For Good Cause Reasons and Responses To
American Technologies, Inc.[56]

---

[50] Dkt. #18 in the Bankruptcy Case.

[51] Dkt. #20 in the Bankruptcy Case.

[52] Dkt ##1 and 2 filed in this adversary on September 24, 2019.

[53] Dkt #31 in the Bankruptcy Case.

[54] Dkt #8 filed in this adversary on November 5, 2019.

[55] *Id*. at 2.

[56] Dkt #17.

B.    Motion For Suppression of January 15, 2020 Deposition as Ordered by American Technologies, Inc. and Their Attorneys, Gordon & Rees/Attorney Matthews For Good Cause Reasons[57]

C.    Second Motion to Dismiss Adversary Proceeding For Good Cause Reasons[58]

50.    On June 24, 2020, Defendant's attorney, Larry Hercules, filed a motion to withdraw.[59]  Withdrawal was granted without objection on August 13, 2020.[60]

51.    Since withdrawal of her attorney, Defendant has regularly filed documents with the Court.  Some of these filings seek specific relief while the intent of others is less clear.  A significant number of these filings have been dismissed without prejudice for failure to comply with applicable pleading requirements.

52.    Defendant filed a summary judgment motion which was denied by the Court.[61]  Plaintiff also filed a summary judgment motion which was denied by the Court.[62]

53.    On May 21, 2021, the Court entered a Notice and Order Regarding Final Pre-Trial Procedures in Adversary Proceeding requesting input from the parties regarding scheduling a trial in this case.[63]  Both parties responded.[64]  The Court thereafter entered its Final Scheduling Order on June 7, 2021 scheduling a trial to begin on August 31, 2021 at 9:30 AM.[65]

---

[57] Dkt #18.

[58] Dkt #31.

[59] Dkt #34.

[60] Dkt #43.

[61] Dkt #89.

[62] Dkt #120.

[63] Dkt #121.

[64] Dkt ## 134 and 136.

[65] Dkt #139.

Document     Page 13 of 21

54.  The Court scheduled and held a telephonic status conference to give Defendant, who is *pro se* after withdrawal of her attorney, an opportunity to address the Court concerning this adversary including with respect to any concerns relating to the logistics of preparing for and/or conducting trial.[66]  Defendant chose not to appear or participate at the status conference.  Defendant failed to appear at trial.

55.  Plaintiff's representative, Nancy Kirk, testified at trial on behalf of Plaintiff. Nancy Kirk was not employed by Plaintiff at the time the June 2018 and July 2018 Contracts were negotiated or executed.

56.  Plaintiff failed to establish by a preponderance of the evidence that, at the time the June 2018 and July 2018 Contracts were executed, Defendant had no intention of performing her contractual obligations as promised.

57.  Indeed, at the inception of the June 2018 and July 2018 Contracts, both sides anticipated that repairs would be performed on Defendant's home and that Plaintiff would be paid for these repairs with funds provided by Defendant's insurance carrier.

58.  Had the parties foreseen the future, Defendant likely would not have allowed Plaintiff to take possession of her personal property nor hired Plaintiff to perform repairs on her home.  Plaintiff likely would have passed on the construction job entirely because of the apparent difficulty of satisfying Defendant's expectations of workmanship quality thereby increasing the risk of nonpayment.

59.  Plaintiff failed to establish by a preponderance of the evidence that Defendant's representations of a willingness and ability to pay under the June 2018 and July 2018 Contracts were false.

60.  Plaintiff failed to establish by a preponderance of the evidence that Defendant made representations of a willingness and ability to pay under the June 2018 and July 2018 Contracts that Defendant knew were false at the time that such representations were made.

61.  Plaintiff failed to establish by a preponderance of the evidence that Defendant otherwise made knowingly false representations to Plaintiff regarding the June

---

[66] Dkt #155.

2018 and July 2018 Contracts with the specific intention and purpose of deceiving Plaintiff.

62.   Plaintiff failed to establish by a preponderance of the evidence that it justifiably relied upon any false representation by Defendant pertaining to the June 2018 and July 2018 Contracts since no such false representations were made to Plaintiff.

63.   The damages that Plaintiff suffered arising from the Defendant's failure to pay the balance due under the June 2018 and July 2018 Contracts arose from a breach of contract, not from any tortious conduct committed by Defendant.

64.   To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## CONCLUSIONS OF LAW

*Jurisdiction and Allocation of Judicial Power*

1.   The Court has jurisdiction to consider the adversary complaint in this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2.   This Court has authority to enter a final judgment on all issues raised in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (I), and (J) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3.   All exceptions to discharge under 11 U.S.C. § 523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997). The Fifth Circuit, however, has ruled that there are limits to this assumption, particularly in reference to the exceptions under 11 U.S.C. § 523 in which the debtor has allegedly committed fraud. *Tummel v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 318-319 (5th Cir. 2005). Consequently, courts must balance a debtor's "fresh start" against protecting the victims of fraud. *Id* at 319.

4.   A preponderance of the evidence standard applies to the determination of the dischargeability of a particular debt. *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991).

14

*Nondischargeability Under § 523(a)(6): Debt Arising from Willful and Malicious Injury*

5.      Plaintiff's Complaint seeks a determination that the debt owed to it should be
excepted from discharge under § 523(a)(6) as a debt obtained by willful and
malicious injury.

6.      11 U.S.C. § 523(a)(6) of the Bankruptcy Code provides that:

> a discharge under §727 of this title does not discharge an
> individual debtor from any debt for money, property, or
> services, . . . (6) for willful and malicious injury by the debtor
> to another entity or to the property of another entity.  11
> U.S.C. § 523 (2020).

7.      The United States Supreme Court has offered its opinion as to what types of debts
Congress intended to except from discharge pursuant to § 523(a)(6).  In
*Kawaauhau v. Geiger*, the Supreme Court stated that:

> [T]he word "willful" in (a)(6) modifies the word "injury,"
> indicating that nondischargeability takes a deliberate or
> intentional injury, not merely a deliberate or intentional act
> that leads to injury.  Had Congress meant to exempt debts
> resulting from unintentionally inflicted injuries, it might have
> described instead "willful acts that cause injury."  Or,
> Congress might have selected an additional word or words,
> i.e., "reckless" or "negligent," to modify "injury."  Moreover .
> . ., the (a)(6) formulation triggers in the lawyer's mind the
> category "intentional torts," as distinguished from negligent
> or reckless torts.  Intentional torts generally require that the
> actor intend "the consequences of an act," not simply "the act
> itself."

> 523 U.S. 57, 118 (1998); citing RESTATEMENT (SECOND) OF TORTS
> § 8A, comment *a*, p. 15 (1964).

> The Supreme Court concluded that negligent or reckless acts are not sufficient to
> establish that a resulting injury is "willful and malicious" and that, therefore,

"debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Geiger*, 523 U.S. at 58.

8.    The *Geiger* decision clearly requires that an actor inflict a deliberate or intentional injury, not merely that an actor take a deliberate or intentional act that leads to injury. *Id.*

9.    In *Miller v. J. D. Abrams, Inc. (In re Miller)*, the Fifth Circuit analyzed the *Geiger* ruling in an effort to articulate a methodology by which to distinguish between acts intended to cause injury as opposed to those merely leading to injury. 156 F.3d 598 (5th Cir. 1998). The *Miller* court determined that a "willful . . . injury" is established under § 523(a)(6) when there exists either: (1) an objective substantial certainty of harm arising from a deliberate action or (2) there is a subjective motive to cause harm by the party taking a deliberate or intentional action. *Id.* at 604-06. It further determined that the standard for determining the existence of a "willful" injury under *Geiger* had subsumed the Circuit's former standard for determining "malicious" conduct under § 523(a)(6) [i.e. "without just cause or excuse"] and had eliminated any need to conduct a separate analysis on that malice element. *Id.* The "objective substantial certainty" prong is a recognition of the evidentiary reality that a defendant in a bankruptcy context rarely admits any prior action was taken with the intent to cause harm to anyone. *Id.*

10.    "A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's *subjective* intent was to inflict a willful and malicious injury on the plaintiff." *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009), citing *Berry v. Vollbracht (In re Vollbracht)*, 276 F. App'x. 360, 362 (5th Cir. 2007).[67]

11.    It is legally insufficient for purposes of §523(a)(6) for Plaintiff to demonstrate that Defendant took intentional actions which resulted in an injury to Plaintiff.

12.    Plaintiff has failed to demonstrate by a preponderance of the evidence the existence of a deliberate or intentional injury inflicted upon it by Defendant.

---

[67] "Injuries covered by § 523(a)(6) are not limited to physical damage or destruction; harm to personal or property rights is also covered by § 523(a)(6)." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 698-99 (Bankr. E.D. Tex. 2009).

13.    Plaintiff has failed to demonstrate by a preponderance of the evidence that the Defendant's actions in breaching the June 2018 Contract and the July 2018 Contract created an objective substantial certainty of harm to Plaintiff.

14.    Plaintiff has failed to demonstrate by a preponderance of the evidence that the Defendant's actions in breaching the June 2018 Contract and the July 2018 Contract created a subjective substantial certainty of harm to Plaintiff.

15.    Thus, Plaintiff has failed to sustain its burden of proof that any portion of the indebtedness owed to it by Defendant arose from the infliction of a "willful and malicious injury" as contemplated by §523(a)(6).

*Nondischargeability Under § 523(a)(2)(A): Debt Arising from False Pretenses or False Representation.*

16.    Plaintiff's Complaint seeks a determination that the debt owed to it should be excepted from discharge under § 523(a)(2)(A) as a debt obtained by false pretenses or by a false representation.

17.    11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code provides that:

> a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

18.    Section 523(a)(2)(A) encompasses similar but distinct causes of action.  Though other circuits have applied a uniform standard to all § 523(a)(2)(A) actions, the Fifth Circuit has distinguished the elements of "actual fraud" and of "false pretenses and false representations." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995).

19.    The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact. *Id.*; *In Re Matter of Bercier*, 934 F.2d 689, 692 (5th Cir. 1991) ("A debtor's promise . . . related to a future action which does not purport to depict current or past fact . . . therefore cannot be defined as a false representation or a false pretense").

17

20.  While "false pretenses" and "false representation" both involve intentional
conduct intended to create and foster a false impression, the distinction is that a
false representation involves an express statement, while a claim of false pretenses
may be premised on misleading conduct without an explicit statement.  *See
Wallace v. Davis (In re Davis)*, 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007); *Haney
v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003).  In
order for a debtor's representation to constitute a false pretense or a false
representation, it "must have been: (1) [a] knowing and fraudulent falsehood, (2)
describing past or current facts, (3) that [was] relied upon by the other party."[68]  *In
re Matter of Allison*, 960 F.2d 481, 483 (5th Cir. 1992); *see Bercier*, 934 F.2d at
692 ("to be a false representation or false pretense under § 523(a)(2), the false
representations and false pretenses must encompass statements that falsely purport
to depict current or past facts").  False pretenses and false representations "both
involve intentional conduct intended to create or foster a false impression." *FNFS,
Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 389 (Bankr. E.D. Tex. 2009).

21.  Because any representation by Defendant regarding her future performance of all
obligations arising under the June 2018 Contract and the July 2018 Contract
pertained to a future event, any such statement cannot be properly characterized as
a false representation or a false pretense in this Circuit.

22.  Plaintiff did not plead a cause of action that its debt be excepted from discharge
pursuant to the "actual fraud" provision in § 523(a)(2)(A), and therefore no relief
can be granted to Plaintiff under that provision of the statute.

23.  A breach of contract "is not sufficient to make a debt non-dischargeable, even
though there is no excuse for the subsequent breach." *Beshears v. McCool (In re
McCool)*, 2019 WL 4781338, at *11 (Bankr. N.D. Tex. Sept. 30, 2019) (citing
*Allison*, 960 F.2d at 484).

24.  As one court has summarized,

It is a matter of well-entrenched jurisprudence that a [party's]
failure to perform as promised, standing alone, gives rise to a

---

[68] Though the Supreme Court in *Field v. Mans* avoided a determination of the degree of reliance required
in a false pretense or false representation case, it is reasonable to assume that justifiable reliance, in
addition to reliance in fact, is the correct level of reliance required to sustain a finding of
nondischargeability in a false pretense or false representation case.  *In re Hernandez*, 208 B.R. 872, 876
n.4 (Bankr. W.D. Tex. 1997); *Field v. Mans*, 516 U.S. 59 (1995).

> case for breach of contract, not actionable fraud,
> misrepresentation or false pretenses under § 523(a)(2)(A).
> Was it otherwise, almost any debt arising out of a failure to
> complete a contract would be nondischargeable and that is
> clearly not the way the statute is written or intended. Instead,
> to be actionable as fraud, the plaintiff must establish that the
> debtor entered into the contract with the intent of never
> complying with its terms.

*Strominger v. Giquinto* (*In re Giquinto*), 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008).

*Mechanic's Lien*

25.   The Texas Property Code provide in some circumstances for a mechanic's lien to secure payment in favor of one providing labor or materials for a construction project.  Tex. Prop. Code § 53.00, *et seq*.

26.   A Chapter 53 mechanic's and materialman's lien is available to one who "labors, specially fabricates material, or furnishes labor or materials for construction or repair . . . of a railroad, a levee, an embankment, a house, a building, or an improvement."  Tex. Prop. Code § 53.021(a)(1).

27.   A Chapter 53 mechanic's and materialman's lien "extends to the house, building, fixtures, or improvements, the land reclaimed from overflow, or the railroad and all of its properties, and to each lot of land necessarily connected or reclaimed."  Tex. Prop. Code § 53.022(a).

28.   A Chapter 53 mechanic's and materialman's lien attaches to the interest of the person contracting for the construction.  *Commer. Structures & Interiors, Inc. v. Liberty Educ. Ministries, Inc.*, 192 S.W.3d 827, 835 (Tex. App.—Fort Worth 2006, no pet.).

29.   A Chapter 53 mechanic's and materialman's lien attaches only to land or fixtures, not to chattels, i.e. personal property.  *GCI GP, LLC v. Stewart Title Guar. Co.*, 290 S.W.3d 287, 295 (Tex. App.—Houston [1st Dist.] 2009, no pet. h.).

30.   For a Chapter 53 mechanic's and materialman's lien to attach, it must be perfected by filing a lien affidavit and providing the required notice.  Tex. Prop. Code § 53.052.

31.  Plaintiff does not have an enforceable lien against the personal contents of Defendant's home remaining in its possession, including decorative art owned by Defendant, and should not retain possession of those personal contents.

## CONCLUSION

32.  Because the Court concludes that Plaintiff, American Technologies, Inc., has failed to prove by a preponderance of the evidence that the asserted debt arising from the June 2018 Contract and the July 2018 Contract arose from a willful and malicious injury inflicted upon it by Defendant, Darlene C. Balistreri-Amrhein, judgment must be rendered for the Defendant under § 523(a)(6).

33.  Because the Court concludes that Plaintiff, American Technologies, Inc., has failed to prove by a preponderance of the evidence that the asserted debt arising from the June 2018 Contract and the July 2018 Contract was obtained by false pretenses or by a false representation of Defendant, Darlene C. Balistreri-Amrhein, judgment must be rendered for the Defendant under §523(a)(2)(A).

34.  Because the Court concludes that Plaintiff, American Technologies, Inc., does not have an enforceable lien against the personal contents of Defendant's home remaining in its possession, Plaintiff must make the personal contents of Defendant's home remaining in Plaintiff's possession reasonably available to Defendant in order that such property may be recovered by Defendant at her expense.  Plaintiff shall not be responsible for Defendant's failure to undertake to recover her property from Plaintiff once it is made reasonably available to her.

35.  Thus, all relief requested in Plaintiff's Amended Complaint in the above-referenced adversary proceeding shall be denied.

36.  As a final note, the Court acknowledges that this has been a long and bitter legal battle between Plaintiff and Defendant which may not end upon the conclusion of this case.[69]

---

[69] *See* Case No. 4:21-cv-00224-ALM-KPJ, *Darlene C. Balistreri-Amrhein v. American Technologies, Inc., et. al*, pending in the United States District Court for the Eastern District of Texas, Sherman Division.

37.    Many of Defendant's filings in this dispute can be fairly characterized as outlandish, baseless, and even vituperative.  The Court does not doubt the frustration of Plaintiff arising from its interactions with Defendant in this case.

38.    However, neither such frustration nor the nature of Defendant's pleadings can supplant the required degree of proper proof necessary to obtain the relief requested, particularly in light of the Bankruptcy Code's directive that efforts to except a particular debt from the scope of a discharge order must be strictly construed against a creditor and liberally construed in favor of a debtor.

39.    To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

40.    An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 11/15/2021

_____

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE